## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

TRI-PHARMA, INC.

    Plaintiff,                          CASE NO. 8:20-cv-03083-CEH-TGW

v.

SAFE HARVEST MEDICAL, LLC;          DISPOSITIVE MOTION
SAFE HARVEST, LLC; GARRETT
MANN; LILLIAN BAY HOLDINGS, INC.;
LILLIAN BAY MEDICAL, INC.;
and BRAD BEATTY

    Defendants.

_____

## SAFE HARVEST DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

Defendants Safe Harvest Medical, LLC, Safe Harvest, LLC, and Garrett Mann (collectively "Safe Harvest Defendants") through their undersigned counsel and pursuant to Federal Rule of Civil Procedure 56 and Middle District of Florida Local Rule 3.01, move this Court for an Order in their favor and against Plaintiff Tri-Pharma, Inc. ("Plaintiff") finding that this Court lacks personal jurisdiction over the Safe Harvest Defendants. Since the initial pleading, the Safe Harvest Defendants have been challenging the Court's jurisdiction but the Court has not ruled on the issue.

## PRELIMINARY STATEMENT

Plaintiff seeks to recover more than $3.85 million from six defendants. Plaintiff's claims arise from two cancelled transactions involving the attempted

sale of a sum of one million medical masks in the early stages of the global pandemic in 2020. The masks were purchased from a company in Dubai and were to be delivered to locations in Minnesota and Missouri. The funds were paid from an escrow account in Texas to Dubai. Plaintiff cancelled the deal but the Dubai entity never returned any of the money paid for the masks. Plaintiff brings various contract and tort claims, alleging that the Safe Harvest Defendants worked with or conspired with Brad Beatty and the Lillian Bay entities and the Dubai entity to deprive Plaintiff of the $3.85 million.

Even if Plaintiff could establish facts that would support its claims—which it cannot—it has failed to establish jurisdiction over the Safe Harvest Defendants. The Safe Harvest Defendants include a Texas resident and two Wyoming companies. Neither company maintain a business in Florida. Neither company is registered to do business in Florida with the Florida Department of State. Moreover, none of the purported acts complained of by Plaintiff occurred in Florida. Plaintiff was not in Florida, the business transaction was not to be performed in Florida, and the escrow accounts that held the funds were not maintained in Florida. As such, Florida's long-arm statute does not reach the Safe Harvest Defendants.

## STATEMENT OF FACTS

**I.  The Safe Harvest Defendants are Not Engaged in Substantial Activity in Florida.**

Garrett Mann is an individual who resides in Texas. (Mann Aff. ¶ 1.[1]) Mr. Mann does not own any property or interests in the State of Florida. (Mann Aff. ¶ 19.) Mr. Mann's interactions with the State of Florida have only been as a tourist and it has been several years since Mr. Mann even traveled to Florida for recreation. (Mann Aff. ¶ 22.)

Safe Harvest LLC is a Wyoming limited liability company created by Mr. Mann. (Mann Aff. ¶ 5.) None of the members of Safe Harvest LLC reside in Florida. (Mann Aff. ¶ 5.) Safe Harvest LLC is not registered to conduct business in Florida and does not conduct business in Florida. (Mann Aff. ¶¶ 9-12.)

Safe Harvest Medical LLC is also a Wyoming limited liability company created by Mr. Mann. (Mann Aff. ¶ 4.) None of the members of Safe Harvest Medical LLC reside in Florida. (Mann Aff. ¶ 4.) Safe Harvest Medical LLC is not registered to conduct business in Florida and does not conduct business in Florida. (Mann Aff. ¶¶ 9-12.)

**II.  The Alleged Conduct at Issue Did Not Occur in Florida.**

Neither Garrett Mann nor any other agent of any Safe Harvest Defendant ever met Plaintiff's representatives or any other defendant in person. (Mann Aff. ¶ 26.) All communications with Plaintiff's representatives were made

---

[1] The Declaration of Garrett Mann filed in this matter at Dkt. 166 on June 3, 2022 will be referenced herein as "Mann Aff." followed by the paragraph number or exhibit letter to which is being cited.

electronically or telephonically. (Mann Aff. ¶ 26.) None of these communications were made from Florida and at no time was any of Plaintiff's representatives in Florida. (Mann Aff. ¶ 26.)

Plaintiff prepared two purchase orders that were directed to Lillian Bay for the purchase of 500,000 medical masks each. (Mann Aff. ¶ 27.) The purchase orders each directed that the 500,000 medical masks be delivered to a location outside the borders of Florida. (Mann Aff. Ex. A.) The medical masks were to be purchased from a seller in Dubai and shipped from China. (Mann Aff. ¶ 28.) The money that was to be used to purchase the medical masks was paid from Plaintiff directly to escrow accounts in Texas. (Mann Aff. ¶ 29.) The money was then paid from the Texas escrow account to the Dubai entity. (Mann Aff. ¶ 30.) Safe Harvest received $266,666.66 from the transaction but this money was paid to Safe Harvest's account located in Texas. (Mann Aff. ¶ 30.)

The Safe Harvest Defendants did not form a partnership or joint venture with the Lillian Bay Defendants. (Mann Aff. ¶ 25.) The Safe Harvest Defendants had no ability or authority to bind the Lillian Bay Defendants and the Lillian Bay Defendants had no ability or authority to bind the Safe Harvest Defendants. (Mann Aff. ¶ 25.) Safe Harvest was merely paid by Lillian Bay a commission for its role in facilitating the sale of the masks by Lillian Bay to Plaintiff. (Mann Aff. ¶ 30.) That role included delivering advertising materials to potential customers, recommending escrow agents for Lillian Bay to utilize, and communicating with Plaintiff and representatives from the seller in Dubai to encourage performance.

(Mann Aff. ¶ 31.) While at times, the parties considered having Safe Harvest play a larger or different role in the transaction, none of the draft agreements about this larger role were ever executed and Safe Harvest's role was limited to that of essentially a broker. (Mann Aff. ¶ 32.)

### III. The Delay and Ultimate Cancellation of the Purchase Orders.

Per its agreement with Lillian Bay, Plaintiff paid the total purchase price of $3.85 million in two equal installments. (Mann Aff. ¶ 29.) Each installment was paid into a separate escrow account in Texas. (Mann Aff. ¶¶ 29, 34, 35.) After Plaintiff authorized the transfer of the initial installment of funds from the escrow account, the escrow agent had difficulty and delays in his efforts to wire the funds from Texas to the account identified by the Dubai entity. (Mann Aff. ¶ 33.) After this delay in funding the transaction, Mann suggested a separate escrow agent be used for the second installment. (Mann Aff. ¶ 34.) The Lillian Bay Defendants engaged a separate escrow agent for the second installment. (Mann Aff. ¶34.) Plaintiff made the second installment into the escrow account and authorized the release of those funds from the escrow account. (Mann Aff. ¶¶ 35, 36.) However, the initial delay in transferring funds to the Dubai entity caused an extensive delay in the delivery of the medical masks. (Mann Aff. ¶ 37.) Plaintiff then requested to cancel the transaction and demanded a return of its money. (Mann Aff. ¶ 38.)

After Plaintiff cancelled the transaction, the Safe Harvest Defendants assisted in efforts to encourage the seller in Dubai to return the money that was

paid to purchase the medical masks in question. (Mann Aff. ¶ 39.) The Safe Harvest Defendants had no authority to mandate that any of the parties to the transaction perform or act in any way. (Mann Aff. ¶ 40.) Moreover, the Safe Harvest Defendants were never in control or possession of any money paid by Plaintiff, other than the $266,666.66 that Lillian Bay paid to Safe Harvest as a commission on the sale. (Mann Aff. ¶ 41.)

## ARGUMENT AND MEMORANDUM OF LAW

The Safe Harvest Defendants have been repeatedly asserting that Plaintiff failed to establish personal jurisdiction since their initial filing. In fact, in response to every pleading and amended pleading and even in motions effecting the pleadings, the Safe Harvest Defendants have raised the issue of lack of personal jurisdiction. (*See* Dkt. 21, 24, 54, 55, 82 at 9, 110 at 6, 123 at 12, 130 at 2.) Due to Plaintiff's repeated amendments to the pleadings and the Court's sua sponte dismissal of a pleading, the issue of personal jurisdiction has never been addressed by the Court. The facts are unchanged since the outset of the litigation and this Court still lacks jurisdiction over the Safe Harvest Defendants. While this was not addressed on a 12(b) motion, the issue is still ripe for the Court to rule at this stage. *E.g. Stevenson v. Cyprus Amax Minerals Co.*, 2018 WL 3361884, *2 (M.D. Fla. July 10, 2018).

Under Rule 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Here, there is no genuine factual dispute that (a)

6

the Court lacks personal jurisdiction over the non-resident Safe Harvest Defendants; (b) Plaintiff failed to establish a claim of conversion or conspiracy to commit conversion; and (c) the claims of constructive trust and injunction are unsupported as a matter of law.

### I. The Plaintiff Cannot Establish Personal Jurisdiction Over the Safe Harvest Defendants.

It is the Plaintiff's burden to establish personal jurisdiction. *See Internet Solutions Corp. v. Marshall*, 557 F. 3d 1293, 1295 (11th Cir. 2009). The courts use a two-step inquiry to determine personal jurisdiction: first, the courts apply the state's long-arm statute; and second, the courts analyze whether exercising jurisdiction would violate the Due Process Clause of the Fourteenth Amendment. *Id.* "Only where the long-arm statute provides jurisdiction do we proceed to the second step and determine whether 'the defendant ha[s] minimum contacts with the forum state' and, if it does, whether the district court's exercise of jurisdiction over that defendant would 'offend traditional notions of fair play and substantial justice.' *PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.,* 598 F.3d 802, 807 (11th Cir. 2010).

Florida's long-arm statute provides for the situations where Florida exercises specific jurisdiction and the application of general jurisdiction. Fla. Stat. § 48.193 (1), (2). Plaintiff does not assert general jurisdiction, but rather asserts that specific jurisdiction exists because the Safe Harvest Defendants are "joint tortfeasors and/or obligors with Lillian Bay Holdings, Lillian Bay Medical, and

7

Defendant Beatty, whether as partners, joint obligors, or joint venturers."[2] (Dkt. 163 at ¶ 18.)

Plaintiff's six claims against the Safe Harvest Defendants are a breach of contract claim and five tort claims. Accordingly, relevant to Plaintiff's claims against the Safe Harvest Defendants, the Florida long-arm statute provides:

> A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself . . . to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts: . . .
> (2) Committing a tortious act within this state. . . .
> (7) Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.

Fla. Stat. § 48.193(1)(a).

Before a court addresses the whether specific jurisdiction exists, the court must determine that Plaintiff has established a prima facie cause of action and can support the alleged claim that forms the basis for asserting jurisdiction. *PVC Windoors, Inc.*, 598 F.3d at 808. As such, we address each count asserted against the Safe Harvest Defendants separately.

### i. The breach of contract claim does not create jurisdiction.

In Count I, Plaintiff alleges that there was a contract for the purchase of 1 million masks for $3.85 and the defendants agreed to return the $3.85 million because the contract was cancelled. (Dkt. 163 at ¶¶ 85-87.) Arguably, Plaintiff has failed to state a claim for breach of contract against the Safe Harvest Defendants

---

[2] While Florida's long-arm statute contemplates acts through an agent (i.e. joint tortfeasors and joint debtors) to establish specific jurisdiction, the statute does not contemplate such acts through an agent for general jurisdiction. Fla. Stat. § 48.193(2).

8

because the purchase orders were between Plaintiff and Lillian Bay Holdings (Mann Aff. Ex. A), the payments were made to escrow accounts "FBO Lillian Bay Holdings" (Mann Aff. Exs. B, D), and the authorizations and instructions to remove the funds from the account were with Lillian Bay Holdings (Mann Aff. Exs. C, E). The Safe Harvest Defendants never entered into a partnership or joint venture agreement and the Lillian Bay Defendants never had the authority to bind the Safe Harvest Defendants to any agreement. (Mann Aff. ¶ 25.) As such, Plaintiff has not presented any facts that would be sufficient to establish that a contract existed between Plaintiff and any of the Safe Harvest Defendant.

However, even if Plaintiff could present facts sufficient for Count I to establish a breach of contract claim against the Safe Harvest Defendants, Plaintiff cannot establish that the Safe Harvest Defendants were within the long-arm statute's reach. Specific jurisdiction is limited to those contracts where performance was to occur in Florida. In the present matter, it is clear that no acts under the alleged contract were to be performed in Florida. Plaintiff is not a Florida resident and was not in Florida during any of the negotiations of the contract. (Mann Aff. ¶ 26.) The masks were to be purchased from an entity in Dubai and shipped from China to locations in Minnesota and Missouri. (Mann Aff. ¶ 28, Ex. A.) The money was to be paid to escrow agents in Texas. (Mann Aff. ¶¶ 29, 35.) After Plaintiff cancelled the contract, the parties demanded the Dubai entity to return the funds to the Texas escrow accounts and payment was to be

made to Plaintiff in Georgia. (Mann Aff. ¶ 39.) There are simply no contacts that implicate Florida's long-arm statute.

To the extent that Plaintiff would argue that the Lillian Bay entities were residents of Florida and that was sufficient to fall within the reach of the long-arm statute, the courts routinely reject that argument as an insufficient basis to establish jurisdiction under a due process analysis. *PVC Windoors*, 598 F.3d at 811-812; *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985) ("If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot.").

In analyzing what is needed more than a single party's residency to establish jurisdiction, the courts look to whether the non-resident purposely availed itself in the jurisdiction. In *Sea Lift, Inc. v. Refinadora Costarricense de Petroleo, S.A.*, 792 F.2d 989, 994 (11th Cir. 1986), the court found there was no jurisdiction over the foreign defendant, even though the defendant physically traveled to Florida to solicit the engagement, when the parties used a form contact, the price was negotiated through remote means, and the duties were to be performed outside of Florida. This is despite the fact that some of the Plaintiff's performance and preparation would or could occur in Florida. *Id.*

There are even less contacts in the present matter than in *Sea Lift*. Like *Sea Lift*, this was a form purchase order prepared by Plaintiff, the key terms of the agreement were negotiated remotely, and the key obligations under the

10

agreement were to be performed out-of-state. However, unlike in *Sea Lift*, there was never an in-person meeting in Florida, there was no solicitation into Florida, and the Plaintiff is not a Florida resident. Even if the long-arm statute could reach the Safe Harvest Defendants, there are insufficient contacts for this Court to exercise jurisdiction over the Safe Harvest Defendants.

> **ii.     Count II does not support jurisdiction under the long-arm statute.**

In Count II, Plaintiff asserts a claim for fraud and conspiracy to commit fraud, asserting that the defendants made knowingly false statements regarding the availability and readiness of the product to be shipped, the cause of the delays of the shipment, and statements made to induce Plaintiff to delay acting on attempts to recover the money. The essential elements of fraud are: (1) a false statement of fact; (2) known by the speaker to be false at the time it was said; (3) made to induce another's reliance; (4) actual reliance; and (5) damages. *See Gandy v. Trans World Computer Tech. Grp.*, 787 So. 2d 116, 118 (Fla. 2d DCA 2001). If a statement is a promise of future action, a plaintiff must show that the defendant had no intention of performing the act at the time of the statement. *Id.* at 118-119.

Plaintiff simply cannot establish that the Safe Harvest Defendants made any knowingly false statements that were relied on by Plaintiff and caused the loss of $3.85 million. The first group of statements made related to the availability of masks, but these statements were made prior to an unexpected

11

delay in processing the international wire and were made based on the representations of Virtus. (Mann Aff. ¶¶ 28, 33.) There is no evidence that the Safe Harvest Defendants had any knowledge that Virtus would not perform even after the delay, which is why Lillian Bay sent the second installment payment to Virtus. (*See* Mann Aff. ¶ 37.) Similarly, the statements relating to the delays after the money was paid to Virtus did not cause any damage to Plaintiff and cannot be used to support the fraud claims. Regardless, to the extent the Safe Harvest Defendants made any statements, the statements were merely relaying information provided from Virtus that Mr. Mann believed to be true. (Mann Aff. ¶ 37.)

Regardless, there is insufficient evidence to establish the Safe Harvest Defendants are within the reach of the long-arm statute. As with the breach of contract claim, the alleged fraud did not occur in Florida. The fraud accrued when the last element occurred, which was either when Plaintiff paid the money from Georgia to the Texas account, or when Plaintiff (while in Georgia) discovered that the funds were not returned to the Texas account and were not going to be paid to Georgia. Thus, the allegations are insufficient on their face to establish that a tort was committed by any of the Safe Harvest Defendants, individually or through an agent, in the State of Florida.

It is true that some courts have ruled that making a phone call into Florida by an out of state resident is sufficient to satisfy the long-arm statue. *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002). However, there are no allegations

of communications being made into Florida in the case at bar. The offensive statements in this case were made to the Plaintiff in Georgia. The reliance occurred in Georgia. The injury occurred in Georgia. The evidence does not support that a tort occurred in Florida. *See April Indus., Inc. v. Levy*, 411 So. 2d 303, 306 (Fla. 3d DCA 1982) (finding defendant was not subject to the long-arm statute when the conspiracy was formed in Florida but the alleged harm occurred in New York against a non-resident); *see also UTC v. Mazer*, 556 F.3d 1260, 1283 (11th Cir. 2009).

Again, even if the long-arm statute could reach the Safe Harvest Defendants, for the reasons expressed above, the alleged conduct by the Safe Harvest Defendants is not sufficient contacts with Florida to satisfy the Due Process Clause. At best, Plaintiff can establish that a co-conspirator made some of the allegedly inducing comments from Florida to lure a Georgia company to pay money to an account in Texas. This does not satisfy the due process requirement.

### iii. Count IV does not allege a conspiracy or a joint-tortfeasor and jurisdiction is unsupported.

Count IV is for unjust enrichment against the Safe Harvest Defendants only. This claim is brought in the alternative to the breach of contract claim and seeks the return of the $266,666.66 paid to Safe Harvest by Lillian Bay. (Dkt. 163 at ¶ 123.) The first element of an unjust enrichment claim is that the plaintiff has conferred a benefit on the defendant, who has knowledge thereof. *Hillman Const. Corp. v. Wainer*, 636 So. 2d 576, 577 (Fla. 4th DCA 1994).

13

Facially, the claim fails because Plaintiff never conferred a benefit upon Safe Harvest. At the time of the transaction, Plaintiff had no knowledge of how Safe Harvest was to be paid or if it even would be paid. Plaintiff rather paid the sum described in the purchase orders between itself and Lillian Bay Holdings, to the escrow account as directed by Lillian Bay Holdings, then Plaintiff authorized the release of funds from the escrow *to Lillian Bay Holdings*. (Mann Aff. Exs. B, D, E.) Lillian Bay then directed the escrow agent to pay Safe Harvest. (Mann Aff. Ex. C.) As such, Plaintiff conferred no benefit to the Safe Harvest Defendants and cannot provide support for this cause of action.

Moreover, this transaction cannot invoke Florida's long-arm statute. The allegation is that a Georgia company made a payment to a Texas bank that paid a Texas company an amount of $266,666.66. This does not invoke any performance in Florida, alleges no harm that occurred in Florida, and does not even involve a Florida resident. As such, Count IV cannot be used to support the Court exercising jurisdiction over the non-resident Safe Harvest Defendants.

### iv. Count V fails to establish a claim for conversion or conspiracy to convert frauds.

In Count V, Plaintiff alleges that it wired two payments of $1,925,000 to designated escrow accounts in Texas. (Dkt. 163 at ¶¶ 126, 24, 28). Plaintiff authorized the release of the funds from those escrow accounts, through wire transfers. (Dkt. 163 at ¶¶ 127, 29, 31). Plaintiff subsequently cancelled its order

14

but was not refunded the amount it paid under the purchase order. (Dkt. 163 at ¶¶ 38, 39).

Florida law is clear, when the parties have a contractual relationship, the "conversion must go beyond and independent from a failure to comply with the terms of the contract." *Transcapital Bank v. Shadowbrook at Vero, LLC*, 226 So. 3d 856, 864 (Fla. 4th DCA 2017) (*quoting Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008)). Likewise, the refusal to pay money determined to be due and owing cannot form the basis of a claim for conversion and a debt that may be discharged by the payment of money cannot form the basis of a claim for conversion. *Rosen v. Marlin*, 486 So. 2d 623, 625 (Fla. 3d DCA 1986); *see also Adv. Surgical Techs., Inc. v. Automated Instruments, Inc.*, 777 F.2d 1504, 1507 (11th Cir. 1985) ("[A] mere obligation to pay money, generally, may not be enforced by a conversion action.").

Here, Plaintiff alleges that there was a contract, that it paid the funds pursuant to the contract, and that the Defendants did not perform under the contract or return the funds. This failure is neither beyond nor independent from failing to comply with the term of the contract. Further demonstration of this fatal flaw is found in reviewing Plaintiff's breach of contract claim in Count I, as Count I seeks the same damages as the conversion claim.

Furthermore, the nature of this transaction is not appropriate for a conversion claim. "[A]n action for conversion of money can only be maintained where the money at issue has been kept separate." *Rupp v. Schon*, 608 So. 2d

15

934, 935 (Fla. 4th DCA 1992). Here, once Plaintiff authorized the release of the funds from the escrow accounts, there was absolutely no obligation by any party to keep the funds separate. In fact, some funds went to Lillian Bay, some funds went to the escrow agents, some funds went to Virtus and some funds went to Safe Harvest. (Mann Aff. Ex. C.) Plaintiff did not cancel the order until after all of the funds had been released, so at the time any obligation to return any funds may have arisen, it was after the money had been separated.

Lastly, "an act which does not constitute the basis for an action against one person cannot be the basis of a civil action for conspiracy." *Kent v. Kent*, 431 So. 2d 279, 281 (Fla. 5th DCA 1983). Since there was no conversion, there can be no conspiracy to convert funds.

As Plaintiff cannot support a cause of action for conversion or conspiracy to convert funds, these claims cannot be used to assert jurisdiction and the analysis can end without consideration of Florida's long-arm statute. *PVC Windoors, Inc.*, 598 F.3d at 808.

      **v.**      **Count VI does not implicate Florida's long-arm statute**

In Count VI, Plaintiff asserts a fraudulent transfer claim from Safe Harvest to Safe Harvest Medical. The facts are clear that Safe Harvest did not transfer $3.85 million or $266,666.66 to anyone, let alone Mann or Safe Harvest Medical.

Regardless, the asserted transfers were made from a Texas account to a Texas account. Mann is a Texas resident and Safe Harvest Medical is a Wyoming company with its offices in McAllen, Texas. (Mann Aff. ¶¶ 1, 4, 7.)  None of the

16

members of Safe Harvest Medical are Florida residents. (Mann Aff. ¶ 4.) And none of the transfers occurred in Florida, and even any repayment obligations will not be made in Florida. This claim does not bring the Safe Harvest Defendants within reach of Florida's long-arm statute.

> vi. **Count VIII asserts two claims that are not recognized as causes of action in Florida and cannot support jurisdiction.**

In Count VIII, Plaintiff brings a claim for constructive trust and injunction. However, these are merely remedies and are not standalone causes of action.

In *Pierson v. Orlando Regional Healthcare Systems, Inc.*, 619 F. Supp. 2d 1260 (M.D. 2009), Judge Antoon analyzed a plaintiff's attempt to bring a claim for injunction. While applying Florida law, Judge Antoon recognized that "an injunction is not a cause of action but a remedy" and that a claim for injunction "cannot stand on its own and must be dismissed." *Id.* at 1288-89.

Count VIII also has a claim for constructive trust—another remedy and not a claim. *Collinson v. Miller*, 903 So. 2d 221, 228 (Fla. 2d DCA 2005) ("A constructive trust, however, is not a traditional cause of action; it is more accurately defined as an equitable remedy.") "Because a constructive trust is a remedy, it must be imposed based upon an established cause of action." *Id.*; *see also Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So. 2d 696, 697 (Fla. 1st DCA 2008).

As Plaintiff cannot state a valid cause of action, the "claims" in this count cannot implicate the long-arm statute. *PVC Windoors, Inc.*, 598 F.3d at 808.

**II. Claim of Conversion and Conspiracy to Commit Conversion is Unsupported by the Evidence.**

For the reasons explained in section I.iv. *supra,* Plaintiff cannot establish a cause of action for conversion under these allegations. Therefore, even if the Court exercises jurisdiction, Count V is unquestionably ripe for summary judgment in favor of the Safe Harvest Defendants.

Additionally, the vast majority of the money went to Virtus in Dubai after it was released from escrow. Only $266,666.66 went to a Safe Harvest, LLC account and no money was sent from the escrow account directly to Mann or Safe Harvest Medical, LLC. Florida law does not permit a conversion claim against a party who does not personally receive the property subject to the alleged conversion. *Transcapital Bank*, 226 So. 3d at 864. Plaintiff cannot pursue a claim of conversion for $3.85 million against the Safe Harvest Defendants when Safe Harvest was only ever in possession of $266,666.66 and neither Mann nor Safe Harvest Medical ever personally received the funds in question.

Even if the Court assumes personal jurisdiction over the Safe Harvest Defendants, there is no evidence to support Count V and summary judgment is appropriate.

**III. Florida Does Not Recognize Standalone Causes of Action for Injunction or Constructive Trust.**

As explained above in section I.vi., through Count VIII, Plaintiff brings unsupported claim for constructive trust and injunction. These are merely remedies and are not standalone causes of action. Regardless of the Court's

18

jurisdiction, summary judgment is appropriate as to Count VIII. *See Pierson*, 619 F. Supp. 2d at 1288-89; *Collinson*, 903 So. 2d at 228.

## CONCLUSION

The Safe Harvest Defendants have been denying personal jurisdiction in this action since its first motion to dismiss was filed on February 17, 2021. The claims asserted by non-resident Plaintiff against the non-resident Safe Harvest Defendants simply cannot be brought in this Court. This transaction was not to be performed in Florida, the payment was not made in Florida, the product was not to be made or shipped from Florida, and the product was not to be delivered in Florida. Neither the Plaintiff nor the Safe Harvest Defendants even visited Florida during the time period outlined in Plaintiff's claims. To the extent that Plaintiff even states claims against the Safe Harvest Defendants, these claims do not bring the Safe Harvest Defendants within the reach of the Florida long-arm statute or they unquestionably violate the Safe Harvest Defendants right to due process.

For the reasons stated herein, the Safe Harvest Defendants respectfully request the Court to refrain from exercising jurisdiction over the Safe Harvest Defendants and enter an Order dismissing all claims asserted against the Safe Harvest Defendants. Alternatively, even if the Court exercises jurisdiction, summary judgment is appropriate under Rule 56 as to Counts I, IV, V, and VIII, and the Safe Harvest Defendants respectfully request an Order granting

summary judgment in favor of the Safe Harvest Defendants as to these specific counts.

Date: June 3, 2022

Respectfully submitted,

*/s/ Matthew F. Hall*
Matthew F. Hall (Fla. Bar No. 92430)
Matthew.Hall@hwhlaw.com
Debra.Whitworth@hwhlaw.com
Jacob Z. Coates (Fla. Bar No. 1011769)
Jacob.Coates@hwhlaw.com
Billie.Wallis@hwhlaw.com
HILL WARD HENDERSON, P.A.
3700 Bank of America Plaza
101 East Kennedy Boulevard
Tampa, FL 33602
Ph. 813.221.3900
Fax 813.221.2900
***Counsel for Defendants Safe Harvest Medical, LLC; Safe Harvest, LLC; and Garrett Mann***